IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HENRIETTA SMITH, as next friend of
H.K. and N.S., et al.,

   Plaintiffs,

      v.

STACEY BAINS, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:24-CV-2102-TWT

**OPINION AND ORDER**

This is a civil rights case. It is before the Court on Defendants Stacey Bains, Amanda Brown, and Kara Padgett's[1] Motion to Dismiss [Doc. 11]. For the reasons set forth below, the Supervisory Defendants' Motion to Dismiss [Doc. 11] is DENIED.

**I.    Background[2]**

This case involves alleged deliberate indifference that resulted in an incarcerated person's suicide. Nicole Smith was a pretrial detainee who had been incarcerated for almost eight months at the time she committed suicide on May 19, 2022. (Compl. ¶¶ 3-4, 27). Defendant Bains held the rank of major at Smith's detention center and had supervisory authority over the detention

---

[1] Throughout this Opinion and Order, the Court will refer to these three Defendants as the "Supervisory Defendants."
[2] The Court accepts the facts as alleged in the Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

officers assigned to Smith's unit. (*Id.* ¶¶ 100-01). Defendant Brown was a sergeant and supervisor in Smith's unit. (*Id.* ¶ 64). Defendant Padgett was a captain employed by the Cobb County Sheriff's Office and served as the detention center's watch commander on May 13-15 and 18, 2022. (*Id.* ¶¶ 83-84) Smith had attempted suicide three previous times before she committed suicide. She first attempted suicide by tying a sheet around her neck on April 5, 2022. (*Id.* ¶ 5). Afterwards, the jail staff placed her on a form of suicide watch called "close observation." (*Id.* ¶ 6).

Inmates on close observation are not allowed access to clothing, linens, personal hygiene products, or any items that may be used to commit suicide. (*Id.* ¶ 10). This generally meant that inmates in close observation were only allowed to possess an anti-suicide safety smock and a mattress. (*Id.* ¶ 11). However, under jail policy, inmates on close observations were given mesh underwear during their menstrual cycles. (*Id.* ¶ 12). These were the only underwear permitted to inmates on suicide watch, and they were not designed to prevent suicide. (*Id.* ¶¶ 13-14).

On April 9, 2022, Smith began refusing her prescribed psychiatric medications. (*Id.* ¶ 8). Then on April 11, 2022, Smith used the mesh underwear supplied to her to create a ligature tied around her neck. (*Id.* ¶ 16). A jail employee discovered the suicide attempt while conducting a routine wellness check. (*Id.* ¶ 17). Approximately a month later, Smith attempted suicide in the

2

same manner with the same type of mesh underwear. (*Id.* ¶¶ 19-20). This time, another inmate alerted a guard to the suicide attempt. (*Id.* ¶ 21). Jail staff transported Smith to the hospital for emergency treatment, but she declined treatment and was discharged the same evening. (*Id.* ¶¶ 25-26). A few days later Smith committed suicide with another pair of mesh underwear that the jail staff had given to her. (*Id.* ¶ 27).

The Plaintiffs assert alternative theories of liability resulting from these events. In Counts I and II, they allege that the detention officers were made aware that Smith should not be given mesh underwear but that they gave them to her anyways. (Compl. ¶¶ 30-50). Alternatively, they assert in Counts IV through VI that the Supervisory Defendants were deliberately indifferent by failing to inform the detention officers that Smith should not be given mesh underwear. (Compl. ¶¶ 63-120). The Supervisory Defendants move to dismiss the claims against them (Counts IV-VI) on qualified immunity grounds.

## II.   Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

"Qualified immunity protects government officials performing discretionary functions . . . from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1343-44 (11th Cir. 2016) (citation omitted). If the official was performing a discretionary function, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Matthews v. Crosby*, 480 F.3d 1265, 1269. "To do so, the plaintiff must: (1) allege facts that establish that the officer violated his

4

constitutional rights; and (2) show that the right involved was clearly established at the time of the putative misconduct." *Jacoby*, 835 F.3d at 1344 (alteration, quotation marks, and citation omitted).

There is no dispute here that the Supervisory Defendants were acting in their discretionary authority during the alleged events. (Pls.' Br. in Opp'n to Mot. to Dismiss, at 16 n.7). The Court therefore starts by analyzing whether the Plaintiffs have sufficiently alleged a violation of Smith's constitutional rights. Finding that they have, the Court then turns to whether that right was clearly established at the time of the events.

A. **Constitutional Violation Prong**

The Plaintiffs assert claims of deliberate indifference against each of the Supervisory Defendants. (Compl. ¶¶ 63-120).[3] "A prison official acted with deliberate indifference if he (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness." *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) (citation omitted). "[I]n a prison suicide case, deliberate indifference

---

[3] Smith was a pretrial detainee at the time of the relevant events. (Compl. ¶ 3). Accordingly, these claims arise under the Fourteenth Amendment rather than the Eighth Amendment. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005). "Nevertheless, in regard to providing pretrial detainees with such basic necessities as . . . medical care[,] the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Id.* (quotation marks and citation omitted).

5

requires that the defendant deliberately disregard a strong likelihood rather than a mere possibility that the self-infliction of harm will occur. [T]he mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1268-69 (11th Cir. 2005) (quotation marks and citation omitted).

The Supervisory Defendants raise several arguments as to why the Plaintiffs have not alleged a constitutional violation. First, they argue that the Plaintiffs fail to state supervisory liability claims against them. (Defs.' Br. in Supp. of Mot. to Dismiss, at 10-15, 21-23). In their Response, the Plaintiffs clarify that they are asserting direct liability claims against the Supervisory Defendants rather than supervisory liability claims. (Pls.' Br. in Opp'n to Mot. to Dismiss, at 19). Consequently, the Supervisory Defendants' arguments about supervisory liability are inapposite.

Next, the Supervisory Defendants contend that the Plaintiffs have not plausibly alleged that the Supervisory Defendants had the requisite mens rea. (Defs.' Br. in Supp. of Mot. to Dismiss, at 15-21). Their strongest argument is that the Plaintiffs fail to meet the requirements laid out in *Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024) (en banc). Prior to *Wade*, the Supreme Court adopted "subjective recklessness as used in the criminal law" as the test for deliberate indifference in the Eighth Amendment context. *Farmer v. Brennan*,

6

511 U.S. 825, 839-40 (1994). In *Wade*, the Eleventh Circuit held that "in order to show that a defendant acted with 'subjective recklessness as used in the criminal law,' a deliberate-indifference plaintiff must demonstrate that the defendant was actually aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Id.* at 1261 (citation omitted). The Court finds that the Plaintiffs have met this standard at this stage of the litigation.[4]

The Complaint alleges that each of the three Supervisory Defendants knew that Smith previously attempted suicide with mesh underwear provided to her. (Compl. ¶¶ 66-67, 91, 104-105). It further alleges that each of them knew that mesh underwear would be provided to Smith unless a directive was issued otherwise. (*Id.* ¶¶ 64-65, 69, 92-93, 104-106, 114-115).[5] It asserts that each of them knew that other methods of informing the deputies not to provide mesh underwear to Smith were not utilized and that the deputies did not otherwise know that Smith attempted suicide with the underwear. (*Id.* ¶¶ 72,

---

[4] In addition to arguing that they have met this standard, the Plaintiffs assert that a civil recklessness standard should apply for purposes of Fourteenth Amendment deliberate indifference claims. (Pls.' Br. in Opp'n to Mot. to Dismiss, at 23-25). Because the Court finds that the Plaintiffs have sufficiently alleged criminal recklessness, the Court declines to address this argument.

[5] For Defendant Brown, the Complaint does not expressly state that she knew the underwear would be provided without an order preventing it. However, that can be reasonably inferred from the fact that she was the supervisor of the housing unit and was allegedly "responsible for ensuring that the oncoming shift knew that Ms. Smith was not allowed to possess mesh underwear." (Compl. ¶ 69).

74-75, 77-80, 93-95, 107-111). Despite that, the Supervisory Defendants allegedly did nothing to prevent the deputies from providing Smith with mesh underwear. (*Id.* ¶¶ 69-70, 72-73, 76, 96, 112-113, 116-117). Being that this case is before the Court on a motion to dismiss, the Court must accept those allegations as true.

Those allegations indicate that the Supervisory Defendants knew that the mesh underwear posed a substantial risk of harm to Smith, knew that inaction would lead her to continue receiving the mesh underwear, and chose not to take action anyways. Moreover, this mesh underwear was not a latent pre-existing risk that she faced; rather, the Supervisory Defendants' inaction is what caused her to have access to the underwear. *See Wade*, 106 F.4th at 1259 ("The Court's focus [in *Farmer*], it seems to us, was on whether the official knew that his own conduct—again, his own acts or omissions—put the inmate at risk, not just whether the inmate confronted a risk in the abstract." (citation omitted)). Thus, the Court finds that these allegations show that the Supervisory Defendants were acting with deliberate indifference to the mesh underwear risk and "*exposed* a prisoner to a sufficiently substantial risk of serious damage to his future health." *Id.* at 1258 (quotation marks omitted).

*Wade* describes a caveat that even if a plaintiff shows that a defendant "was subjectively aware that his conduct put the plaintiff at substantial risk of serious harm," the defendant may not be found liable if he "respond[ed]

8

reasonably to a risk." *Id.* at 1255 (quotation marks and citation omitted). The Supervisory Defendants do not argue that they are protected by this caveat. However, they argue elsewhere in the brief that this case is different from other prison suicide cases because here there were "numerous ongoing precautions [that] were taking place to prevent Smith from committing suicide." (Defs.' Br. in Supp. of Mot. to Dismiss, at 17). While those precautions may have been a reasonable response to Smith's initial suicide attempt with a sheet, they proved to be ineffectual after Smith attempted suicide twice with the mesh underwear provided to her while she was under close observation.[6] Certainly after the second attempted suicide with the mesh underwear required hospitalizing Smith, the Supervisory Defendants knew of the specific risk posed by the mesh underwear.[7] According to the Complaint, the

---

[6] This is particularly true in the second suicide attempt with the mesh underwear because in that instance, it was another inmate that noticed that Smith was attempting suicide and alerted the guards. (Compl. ¶ 21). The noted precautions did not play any role in thwarting that attempt.

[7] The Supervisory Defendants' knowledge of the threat posed by the mesh underwear is certainly not changed by the fact that Smith did not commit suicide in her first six months in jail or that the hospital discharged Smith after she declined treatment. (Defs.' Br. in Supp. of Mot. to Dismiss, at 16; Compl. ¶ 26). The Supervisory Defendants also point to the fact that the mental health professionals who saw Smith after her second suicide attempt with the mesh underwear did not escalate her from "close observation" to "constant watch." (Defs.' Br. in Supp. of Mot. to Dismiss, at 16-17). The first issue with this argument is that it relies entirely on allegations not incorporated into the relevant counts. Furthermore, Smith was in the same category of suicide watch that she was in when her previous two attempts took place, so there was no reason to think that she was less likely to commit suicide than she was when she made her first two attempts with the mesh underwear.

Supervisory Defendants did nothing to mitigate that risk. That is not reasonable.

The Court therefore finds that the Complaint plausibly alleges the requirements defined in *Wade*. The Supervisory Defendants' other mens rea arguments may be addressed more summarily. They assert, "[i]n cases where prisoners manage to harm themselves in ways that seem improbable, courts usually hold that officers do not act with 'deliberate indifference' by failing to guard against unlikely events." (Defs.' Br. in Supp. of Mot. to Dismiss, at 18). The idea that the way Smith committed suicide was so improbable as to be considered unfeasible is preposterous. She had attempted suicide twice by the same exact method, and one of those times was less than a week prior to when she in fact committed suicide. Unsurprisingly, neither of the cases to which the Supervisory Defendants cite involve allegations that the decedent previously attempted suicide by the same means. *See Gish v. Thomas*, 516 F.3d 952 (11th Cir. 2008); *Cagle v. Sutherland*, 334 F.3d 980 (11th Cir. 2003).

Finally, the Supervisory Defendants state that there were at least twelve ways in which subordinates could have been informed not to give Smith underwear. (Defs.' Br. in Supp. of Mot. to Dismiss, at 20). "As such, it is too great a leap to assume Major Bains, Captain Padgett, and Sergeant Brown each drew the conclusion that if she did not personally ensure all staff knew not to provide Smith underwear, Smith would very likely succeed in

10

committing suicide." (*Id.* at 20-21). However, the allegations to which the Supervisory Defendants cite for the twelve methods each state that the relevant Defendant knew these methods were not being used. Since the Court must accept factual allegations as true, there is no "leap" at all to say that the Supervisory Defendants knew that no one else had issued a directive to not provide mesh underwear to Smith. The Court accordingly finds that the Plaintiffs have alleged deliberate indifference in violation of the Fourteenth Amendment.

### B. Clearly Established Prong

To overcome qualified immunity, the right at issue must be "clearly established such that a reasonable official would understand that what he is doing violates that right." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc) (citation omitted).[8] Plaintiffs may demonstrate this in three

---

[8] In its research, the Court has come across an Eleventh Circuit case quoting a Ninth Circuit case stating, "[a] finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who *deliberately* ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law." *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994) (quoting *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992). The Eleventh Circuit subsequently stated that that statement was dicta and demurred on the question of whether a finding of deliberate indifference necessarily satisfies the clearly established prong. *Lancaster v. Monroe County*, 116 F.3d 1419, 1426 n. 7 (11th Cir. 1997). Moreover, the Ninth Circuit later overruled the quoted portion of *Hamilton*. *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043 (9th Cir. 2002) ("Accordingly, we conclude that *Hamilton,* which collapses the deliberate indifference part of the constitutional inquiry into the qualified immunity inquiry, has been undermined by *Saucier*."). For these reasons, the

ways:

> First, the plaintiffs may show that a materially similar case has already been decided. Second, the plaintiffs can point to a broader, clearly established principle [that] should control the novel facts [of the] situation. Finally, the conduct involved in the case may so obviously violate[ ] th[e] constitution that prior case law is unnecessary.

*Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012) (quotation marks and citations omitted). Under Eleventh Circuit precedent, the Court may look "only to binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose—to determine whether the right in question was clearly established at the time of the violation." *Coffin*, 642 F.3d at 1013 (citation omitted). "Cases successfully invoking the second and third rationales are rare." *Lindley v. Birmingham*, 652 F. App'x 801, 807 (11th Cir. 2016) (citation omitted).

The Plaintiffs do not point to a materially similar case or argue that this alleged violation is so obvious that prior case law is unnecessary. (Pls.' Br. in Opp'n to Mot. to Dismiss, at 16-18). Instead, they rely on the second category and contend that "the law is clearly established that an officer cannot simply ignore a known risk of suicide." (*Id.* at 16) (citation omitted). Specifically, they cite to *Snow*, 420 F.3d at 1270, which states, "[b]ecause, at the time of Poiroux's death, it was clearly established that an officer's deliberate indifference to the

---

Court will conduct a full analysis of the clearly established prong.

risk of serious harm to a detainee is a violation of the Fourteenth Amendment, the district court erroneously granted summary judgment on Snow's claim against Chennault." (citation omitted); *see also Patel v. Lanier County*, 969 F.3d 1173, 1190 (11th Cir. 2020) ("This broad principle has put all law-enforcement officials on notice that if they actually know about a condition that poses a substantial risk of serious harm and yet do *nothing* to address it, they violate the Constitution.").

The Supervisory Defendants respond by arguing that this case is factually distinct. (Reply Br. in Supp. of Mot. to Dismiss, at 6-7, 10). This misses the point. Material similarity is a question under the first category of clearly established law, but the Plaintiffs are asserting arguments under the second category, which involves identifying a "broader, clearly established principle [that] should control *the novel facts [of the] situation*." *Terrell*, 668 F.3d at 1255 (emphasis added) (quotation marks and citation omitted). Because the relevant principle falls under the second category, *Snow* could rely on *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999)—a case alleging deliberate indifference with respect to the plaintiff's serious medical needs related to cancer—to satisfy the clearly established prong in a prison suicide case. *Snow*, 420 F.3d at 1270.

Similarly, the facts here fit the broad principle that the Eleventh Circuit has recognized, even if the facts are not the exact same as those previous cases.

13

As stated above, following the two suicide attempts with the mesh underwear, the Supervisory Defendants actually knew the substantial risk of serious harm that the mesh underwear posed to Smith. Despite that, they did nothing to prevent Smith from having access to mesh underwear. The law at the time of the events in this case was sufficient to put the Supervisory Defendants on notice that they could not ignore the substantial risk of serious harm that continuing to give Smith the mesh underwear posed. Accordingly, the Court finds that the Plaintiffs have carried their burden of showing that qualified immunity does not apply at this stage of the litigation.

## IV.   Conclusion

For the foregoing reasons, the Supervisory Defendants' Motion to Dismiss [Doc. 11] is DENIED.

SO ORDERED, this     26th     day of February, 2025.

*Thomas W. Thrash*
THOMAS W. THRASH, JR.
United States District Judge